**John Richard FURTADO, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5348.**

Supreme Court of Wyoming.

Feb. 12, 1981.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, Michael H. Schilling, Albany County Public Defender and Cheryl C. Burnett, Student Intern, Wyoming Defender Aid Program, signed the brief on behalf of appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division and Allen C. Johnson, Senior Asst. Atty. Gen., signed the brief on behalf of appellee.

Before ROSE, C. J., and McCLINTOCK, RAPER, THOMAS and ROONEY, JJ.

RAPER, Justice.

The appellant-defendant was charged with the crime of assault and battery with a dangerous or deadly weapon in violation of § 6–4–506(b), W.S.1977.[1] He entered a plea of not guilty, was tried before a jury, found guilty and sentenced to a term of not less than two not more than six years in the Wyoming State Penitentiary. The appellant claims that it was error for the sentencing judge, in imposing sentence, to con-

---

1. Section 6–4–506(b), W.S.1977:

    "Whoever, while armed with a dangerous or deadly weapon, including an unloaded firearm, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined nor more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

sider, the fact that the defendant did not plead guilty. That is the sole issue in this case.

We will affirm.

The facts of the crime are that the appellant, during an altercation, stabbed his unarmed victim, the jury finding all the elements necessary to his guilt present: the appellant maliciously did bodily harm to the victim and appellant was armed with a dangerous or deadly weapon (knife) with which he cut the victim's liver, penetrated the gallbladder causing bile to leak out and punctured both sides of the large bowel. Major surgery was required to repair and the wound was medically described as life threatening. There was no problem with the elements of date and venue charged.

A sentencing proceeding was held following a presentence investigation by the State Department of Probation and Parole. The proceeding was extensive, reported in 45 pages of transcript. The appellant testified and produced witnesses on his behalf to demonstrate the hardship of confinement and that since the trial he had taken a new view of himself, recognized his mistakes, had quit drinking and was, for the most part, rehabilitated and probation was necessary to finish the job of reform. He was afforded every opportunity to express himself in whatever way he desired, by his own testimony, by that of witnesses and through counsel.

The trial court demonstrated infinite patience, understanding and compassion, pointing out appellant's charming personality, what a nice wife he had and the advantages of being with his family and continuing in his job. The trial judge also, in the delicate work of balancing those matters to be considered in the sentencing function, pointed out that there had been a crime of violence from which death of the victim could have ensued and appellant was fortunate in that respect. He pointed out that when the appellant engages in drinking, he is considered a dangerous person.[2] The judge emphasized that he must and had considered probation. See *Sanchez v. State*, Wyo.1979, 592 P.2d 1130. The court also pointed out that it had duties to the public in retribution against those who break the law, to make a disposition for its protection from dangerous persons and to weigh whether probation would foster disrespect for the law. While not mentioned by the court in its remarks relative to sentencing, the appellant did testify at the sentencing hearing about another event which exemplifies his dangerous proclivities when intoxicated. In 1968, while in confinement serving a two-year term, he and some other prisoners got drunk from prisoner-made "home brew" and various pills and as a result got "blitzed." They executed a plan to escape and the escape involved violence. Charges were brought against the defendant of kidnapping, assault with intent to commit murder, armed robbery, assault and battery on a guard, and escape. The kidnapping charge was not prosecuted, and adjustments were made in several of the other charges. The appellant admitted his involvement by his plea of guilty to the adjusted charges and was sentenced to and served additional time in prison.

During the trial judge's explanation of all these matters, he remarked:

"This is not a case of a plea of guilty being entered by the defendant as the first step of rehabilitation, as in most instances. We have a conviction by a jury of 12 people who heard all the evidence and everything that was had to say in your behalf and for the State."

Appellant asserts that to impose a punishment on a person because he has exercised his right to plead not guilty and require the State to prove its case is "a due process violation of the most basic sort," citing *Bordenkircher v. Hayes*, 1978, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604, reh. den. 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511.[3] The statement made by the trial judge here

---

2. The sentencing proceedings include observations of knowledgeable persons that "[w]hen [appellant] drinks he's wild" and "[w]hen [appellant] drinks he is dangerous."

3. This case did not involve the question before us. In *Bordenkircher* the court of appeals held that the prosecutor cannot threaten a defendant with the consequence that more severe

is of an entirely different tone than that made by the trial judge in *Johnson v. State*, 1975, 274 Md. 536, 336 A.2d 113, cited by appellant, where he said "*  *  *  if you had come in here with a plea of guilty  *  *  * you would probably have gotten a modest sentence, concurrent with the one in the District of Columbia  *  *  *."* [4] (Emphasis in original text.) *In re Lewallen*, 1979, 23 Cal.3d 274, 152 Cal.Rptr. 528, 590 P.2d 383, cited by appellant is also readily distinguishable from the circumstances of the case before us. Analyzed, the facts of that case disclosed that when the trial judge stated at sentencing, 590 P.2d at 387, " 'as far as I'm concerned, if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, *but* on the

charges may be brought if he insists on going to trial if the defendant refuses during plea bargaining negotiations to plead guilty to less serious charges and that to do so is vindictive. The Supreme Court of the United States reversed and held that "*  *  *  in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." For another enlightening case approving plea bargaining cases where "it is not forbidden to extend a proper degree of leniency in return for guilty pleas," see *Corbitt v. New Jersey*, 1978, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466.

It should also be pointed out that what appellant attributes to *Bordenkircher* at page 363 was said, citing *North Carolina v. Pearce*, 1969, 395 U.S. 711, 738, 89 S.Ct. 2072, 2082, 23 L.Ed.2d 656 (opinion of Black, J., concurring in part and dissenting in part). The Court's holding in *Pearce* was that there is no absolute constitutional bar to imposing a more severe sentence on reconviction but vindictiveness can play no part.

4. The harshness and obvious vindictiveness and even anger of the trial judge in *Johnson* is apparent when the quoted words are set out in the context in which they were delivered, as the full text of the colloquy illustrates:

 " 'The court: What lesson have you learned when you were not telling the truth about it at the time of trial?

 " 'The defendant Johnson: I wasn't telling the truth about it?

 " 'The court: That's right. The jury didn't believe you about this wild story about a man running out and asking you to hold something; that's perfectly ridiculous. The jury didn't accept it and I didn't accept it. You weren't telling the truth.

 " 'The defendant Johnson: I was telling the truth.

other hand he's not going to have the consideration he would have had if there was a plea.' (Italics added.)" [5] In the case before us the court made no such statement as to what he would have done if the appellant had entered a plea of guilty.

The other cases cited by appellant are of a similar tenor to those just examined. The appellant attempts to attribute to what is otherwise an innocuous truth, some subtle, hidden meaning. By taking it out of the context of the full statement of the court's explanation of its sentence, its real connotation is distorted beyond recognition.

An examination of the testimony of appellant at the sentencing hearing does disclose an acknowledgment of guilt:

 " 'The court: Very well. A necessary ingredient to leniency in any case is the attitude of the individual.

 " 'The defendant Johnson: Yes, sir.

 " 'The court: And when you sit up here and lie about it, and you're not telling the truth. You think you're trying to get away with it. That attitude is not consistent with any consideration for leniency. If you had come in here after this happened, before the other trouble you got into—*if you had come in here with a plea of guilty* and been honest about [it] and said, "Of course I did it," which you did, *you would probably have gotten a modest sentence, concurrent with the one in the District of Columbia*, and you would have gotten out of it. *But with this attitude that you have you can't receive that kind of treatment.*

 *     *     *     *     *     *

 " 'Very well, that's all.' " (Emphasis in original text.)

The Court then walloped the defendant with a twelve-year penitentiary sentence.

5. The ultimate holding of the California court, 590 P.2d at 388, was that:

 "Thus it is clear that under appropriate circumstances a defendant may receive a more severe sentence following trial than he would have received had he pleaded guilty; the trial itself may reveal more adverse information about him than was previously known. A court may not, however, impose a sentence that conflicts with a defendant's exercise of his constitutional right to a jury trial. (See *In re Manino* (1971), 14 Cal. App.3d 953, 967, 92 Cal.Rptr. 880.) The comments of the judge reveal that is what occurred here."

"As I stand here right now, I don't know—I don't want to try for sympathy with the court, especially, you know, at the end of this case here, but it is apparent that, you know, my wife is 8 months pregnant, and the tragedy of this and the guilt that I feel, not only for the victim of the crime, but also the innocent victim, my wife, too. \* \* \*"

That was the eventual plea of guilty to which the trial judge could well have alluded and was possibly considered by the trial judge as the first step in rehabilitation which undoubtedly influenced the court in rendering the light and what appears to be an exceptionally modest sentence for this crime of violence. However, even in the absence of that possibility, the court's expression has a proper and lawful basis.

We find the wording used by the trial judge well expressed in Standard 14–1.8, Consideration of Plea in Final Disposition, III ABA Standards for Criminal Justice, Second Edition, Little, Brown and Company (1980), p. 14–40:

"(a) The fact that a defendant has entered a plea of guilty or nolo contendere should not, by itself alone, be considered by the court as a mitigating factor in imposing sentence. It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when consistent with the protection of the public, the gravity of the offense, the needs of the defendant, and when there is substantial evidence to establish that:

"(i) the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct;

"(ii) the concessions will make possible alternative correctional measures which are better adapted to achieving protective, deterrent, or other purposes of correctional treatment, or will prevent un-

due harm to the defendant from the form of conviction;

"(iii) the defendant, by making public trial unnecessary, has demonstrated genuine consideration for the victims of his or her criminal activity, by desiring either to make restitution or to prevent unseemly public scrutiny or embarrassment to them; or

"(iv) the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct.

"(b) The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the protective, deterrent, or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove guilt at trial rather than to enter a plea of guilty or nolo contendere."

■ The substance of the trial judge's remark is found in the commentary, Standards, supra, p. 14–46, with respect to pleas of guilty, Standard 14–1.8(a)(i), where it is said:

"\* \* \* The standard also is supported by expert opinion on the significance of a confession of guilt. As one court has remarked, 'In the present state of our knowledge of human psychology it is at least doubtful that judges should be required, in every case, to disregard \* \* \* [the assumed psychological effect of an acknowledgment of guilt as an important step in the process of reformation] when imposing sentence.'[18][6] (Brackets appear in original text.)

We can find nowhere in the sentencing proceedings any hint that the trial judge was punishing[7] the appellant for entering a

---

**6.** Footnote 18 to the quoted passage cites *People v. Darrah*, 1965, 33 Ill.2d 175, 210 N.E.2d 478, 481, cert. den. 383 U.S. 919, 86 S.Ct. 917, 15 L.Ed.2d 674.

**7.** The commentary to Standard 14–1.8(b), supra, at p. 14–49, explains this concept in excellent fashion:

"Frequently at least one of the considerations listed in subparagraphs (a)(i)–(iv) will apply to defendants who enter a plea of guilty or nolo contendere, so that such defendants, as a class, will receive more favorable treatment than the class of defendants who stand trial and are convicted. Because

plea of guilty and requiring a trial. We hold the rule to be that a sentencing judge may grant leniency to a defendant who pleads guilty in the presence of the conditions set out in Standard 14–1.8(a), supra, but he may not enhance a sentence by way of vindictiveness or punishment because a defendant has refused to do so and has gone to trial. The trial judge here meticulously followed every good and accepted sentencing procedure and practice. We find no error.

Affirmed.

each of the foregoing considerations is related to legitimate objectives of the criminal law, this disparity in treatment is in no sense unfair or inconsistent with the goal of uniformity in sentencing.

"Standard 14–1.8(b) states specifically what is implicit in paragraph (a): this disparity in treatment is not to be accomplished by the imposition of excessive penalties on those who stand trial. The defendant who goes to trial should not be punished for putting the state to its proof, and the defendant should receive only that sentence which properly serves the deterrent, protective, and other objectives of the criminal justice system.

"It has been contended, of course, that if any disparity exists between the defendant who stands trial and other defendants, the former is receiving excessive punishment. That view is rejected here. There is an essential difference between system A, in which defendants who go to trial receive the greatest punishment justifiable under accepted principles of penology and some defendants who plead guilty or nolo contendere receive something less because of the circumstances surrounding their plea, and system B, in which disparity results from giving defendants who stand trial greater punishment than can be justified. Numerous appellate cases support the position that a policy of leniency following a plea is proper but that its converse, 'extra' severity following trial, is not." (Footnotes omitted.)